DATE FILED: January 23, 2017 10:49 AM
FILING ID: 763905F865747
CASE NUMBER: 2017CV30294

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**
1437 Bannock Street
Denver, CO 80202

**Plaintiff:** CHERINET O. DABA, an individual;

v.

**Defendant:** OPTIMAL HOME CARE INC. a Colorado corporation.

▲ **COURT USE ONLY** ▲

Attorney for Plaintiff:
Igor Raykin, Esq.
2851 S. Parker Rd., Ste. 150
Aurora, CO 80014
Phone: 720-748-8888
FAX Number: 720-748-8894
E-mail: igor@coloradolawteam.com
Atty. Reg. No.: 43081

Case Number:
    To be determined

Division:

Courtroom:

**COMPLAINT**

Plaintiff, Cherinet O. Daba ("Daba" or "Plaintiff"), by and through his attorney Igor Raykin, Esq. of the law firm of Kishinevsky & Raykin, LLC, for his Complaint against Defendant Optimal Home Care Inc. ("OHC" or "Defendant"), on information and belief, states as follows.

## PARTIES, JURISDICTION, AND VENUE

1. This litigation arises from OHC's discriminatory and retaliatory conduct against Plaintiff during his employment because of his race and national origin.

Exhibit A

2. Plaintiff satisfied the relevant jurisdictional requirements under the relevant law by filing EEOC Charge No. 541-2016-02270 (the "Charge") with the Denver Field Office of the Equal Employment Opportunity Commission ("EEOC") and later receiving a Notice of Suit Rights on October 26, 2016. *See* **(Exhibit 01)**.

3. Plaintiff is a resident of Arapahoe County, Colorado.

4. OHC is a Colorado corporation with its principal place of business located at 4380 South Syracuse Street, Suite 600, Denver, Colorado 80237. *See* **(Exhibit 02)**.

5. OHC is a home health care and private duty agency which serves the counties and surrounding cities of Denver, Douglas, Arapahoe, Adams, Arapahoe, Boulder, El Paso, Larimer, and Jefferson (the "area of operations").

6. The wrongful acts alleged by Plaintiff against Defendant occurred in whole or in part in the City and County of Denver, Colorado.

7. The Court has personal jurisdiction over all parties pursuant to C.R.S. § 13-1-124 because the parties are residents of Colorado.

8. Venue is proper in this Court under C.R.C.P. 98 because OHC is a resident of the City and County of Denver.

## FACTUAL BACKGROUND

9. Plaintiff is an African American male from Ethiopia.

Exhibit A

10. Defendant hired Plaintiff as a home healthcare aide on or about July 2007 as an independent contractor. Defendant later converted him to an employee in 2014.

11. Plaintiff, during his employment, worked in the area of operation as instructed by OHC's dispatcher for the various patients of OHC. OHC empowers its dispatcher to make tangible employment actions with respect to its employees, including but not limited to a significant change in the benefits it affords its employees. As applicable here, it permits its dispatcher to exercise independent discretion when making decisions regarding the work schedules and resulting wages of its home healthcare aides.

12. OHC provides skilled nursing, physical/occupational/speech therapy, medical social work, home health aide and personal care/companionship services. Plaintiff provided some or all these services to OHC's patients since he began working for OHC in 2007. .

13. OHC currently is currently advertising in one of its job postings that it "has grown to a diverse workforce of over 300 staff and continues to grow as we strive to provide the 'best home care possible.'"

14. Throughout 2015, OHC held monthly meetings where its agents reported to its employees that the company was experiencing growth. Plaintiff attended these meetings.

15. Plaintiff received positive performance reviews throughout his employment at OHC. In his Supervisory Visit CNA reports covering the August 11 through September 2 period, he received only "meets requirements" and "exceeds requirements" ratings.

16. OHS guaranteed that Plaintiff would receive fifty patients during each two-week pay period.

Exhibit A

17. OHS indeed provided Plaintiff the guaranteed number of patients until 2015.

18. Since 2015 and despite his positive performance reviews, Plaintiff has been subject to discrimination by OHC. Relative to his non-black and non-African co-workers, OHC reduced the number of patients OHC provided Plaintiff and, in turn, halved his hours and resulting income. OHC then, after the filing of the Charge, reduced the patients it assigned Plaintiff to a near-zero level.

19. OHC additionally subject Plaintiff to different terms and conditions of employment. On July 13, 2016, OHC required Plaintiff to return the company vehicle, a Toyota Corolla, it provided him to use when performing home healthcare aide. No other similarly situated, non-protected class employees suffered the same loss.

20. Plaintiff first orally reported his suspicions of discrimination to Eric Ehrie ("Mr. Ehrie") from OHC's human resources department. *See* **Exhibit 06**. Nothing came of these oral reports.

21. Then, on May 3, 2016 Plaintiff reported discrimination to OHC in writing via e-mail, but OHC responded by continuing to reduce Plaintiff's patient workload, leading to Plaintiff's suffering economic and non-economic damages. *See* **Exhibit 06**.

22. On May 3 and May 4, 2016, Plaintiff complained directly to Audrey Starbucks ("Ms. Starbucks"), OHC's Director of Nursing and others, including Mr. Ehrie. *See* **Exhibit 05**. Plaintiff complained about the low number of patients he was receiving and how he was being treated unfairly. The low number of patients directly led to less hours worked by Plaintiff, which directly led to his receiving less wages.

Exhibit A

23. On September 9, 2016, Plaintiff provided a letter to Ms. Starbucks in which he indicated that, even after having complained of discrimination directly to her in May and even after she promised to investigate, nothing was done to address Plaintiff's concerns. *See* **Exhibit 05**. Plaintiff indicated that the number of patients assigned to him during the previous four months was halved. During the week of September 9, for example, he only had eight patient visits, which was a figure significantly lower than what he had been assigned.

24. On September 20, 2016, Plaintiff contacted Mr. Dan Downs ("Mr. Downs"), the Director of Human Resources with Defendant employer, Ms. Starbucks, and Mr. Ehrie to once again complain of discrimination. *See* **Exhibit 05**.

25. Finally, on September 30, 2016, Mr. Downs sent an email to Plaintiff (**Exhibit 03**) acknowledging receipt of Plaintiff's concerns regarding discrimination. Mr. Downs acknowledged having a conversation with the Defendant's scheduler "to reinforce that there should never be any discrimination or favoritism when 'doling out' the schedules for patients." Mr. Downs claimed that the scheduler understood this. Despite this, however, Mr. Daba's hours continued to be cut to the point where it was becoming impossible for him to make a living. Essentially, Defendant completely disregarded Plaintiff's complaints and looked past the Plaintiff's decline in hours.

26. Plaintiff consistently earned the same amount per year throughout his career at OHC. However, beginning in 2015, he started to earn significantly less than he usually earned because OHC reduced Plaintiff's patient workload, eventually reducing the workload to no patients.

Exhibit A

27. Plaintiff's pay stubs, (**Exhibit 04)**, which have been provided to Defendant but not electronically filed due to the presence of personal financial information, show a clear pattern of Plaintiff's hours being cut. The breakdown is as follows:

Pay Period 5/22/16 to 6/4/16: 56 hours.

Pay Period 6/5/16 to 6/18/16: 15 hours.

Pay Period 6/19/16 to 7/2/16: 28 hours.

Pay Period 7/3/16 to 7/16/16: 27 hours.

Pay Period 7/17/16 to 7/30/16: 27 hours.

Pay period 7/3/16 to 8/13 16: 38 hours.

28. On October 26, 2016, Plaintiff received his Dismissal and Notice of Rights letter (commonly referred to as a "Right to Sue" letter) from the EEOC. *See* **Exhibit 1**. This letter granted Plaintiff the right to initiate litigation.

29. On November 9, 2016, Plaintiff wrote Mr. Downs and Ms. Starbucks again (**Exhibit 06)**. He indicated that, as an employee, he was guaranteed 50 visits every two weeks as a full-time employee, but since the beginning of 2016, the number of visits was reduced to 40 every two weeks, and then subsequently to 30. As of the date of this November 9 contact, Plaintiff only had five patients and less than 25 visits every two weeks. Plaintiff indicated that he had repeatedly reported discrimination to various agents of Defendant, including Mr. Ehrie and others, but that his complaints had been ignored or dismissed. Plaintiff claimed that, in the preceding two weeks leading up to this letter, his paycheck was less than $400 and he could not live off that.

Exhibit A

30. In this letter, Plaintiff indicated that his job status essentially had been changed from full time to part time; that his company car, which he had for eight years, had been taken from him; that he was averaging one patient visit per day while others similarly situated were getting seven to 10 visits per day; that no new patients had been assigned to Plaintiff since he filed his EEOC charge; that he had suffered a loss of income; that he was the only black male in his position with Defendant employer; that almost all other employees in his position with the Defendant employer were white females; and that he had experienced verbal discrimination from his supervisors.

31. By cutting Plaintiff's patient workload to a level at or near zero after Plaintiff had filed his EEOC charge, Defendant had retaliated against Plaintiff for filing with the EEOC.

### FIRST CLAIM FOR RELIEF

*(VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964)*

32. Plaintiff incorporates by reference the allegations in all paragraphs as if set forth fully herein.

33. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 (2016) ("Title VII"), prohibits an employer from discriminating against its employees based on their race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a).

34. Under Title VII, it is an unlawful employment practice for an employer: (1) to discharge or otherwise to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's protected class status; or (2) to limit, segregate, or classify its employees in any way which would tend to deprive any

Exhibit A

individual of employment opportunities or otherwise adversely affect his or her status as an employee, because of such individual's protected class status. *Id.*

35. Retaliation against an employee who has participated in any manner in an investigation, proceeding, or hearing under Title VII is likewise prohibited. 42 U.S.C. § 2000e-3(a).

36. The Commission defines national origin discrimination broadly as including, but not limited to, because an individual has the physical, cultural, or linguistic characteristics of a national origin group. 16 C.F.R. 1601.1.

37. OHC employed Plaintiff from 2007 until his constructive discharge in December 2016, on first an independent contractor basis and later as an employee at times relevant to this Complaint.

38. OHC is not an exempted employer as contemplated by Title VII.

39. Plaintiff filed the Charge and received a Right to Sue Letter. *See* **Exhibit 01**.

40. Plaintiff is a member of the protected class because he is both African American and from Ethiopia.

41. Plaintiff was qualified to perform his job, the same job he satisfactorily performed at OHC since 2007.

42. Plaintiff suffered adverse employment decisions because OHC first reduced his patient visits and then constructively discharged Plaintiff from his employment after it nearly eliminated all his patient visits. OHC additionally forced Plaintiff to return his company vehicle.

Exhibit A

43. OHC made these adverse employment decisions based on Plaintiff's race and national origin.

44. Similarly situated non-protected class employees neither had their patient visits reduced nor reduced to a near-zero level. They likewise were not forced to return their company vehicles.

45. OHC is experiencing growth, increasing its patient levels and services provided.

46. OHC's patients continually rotated through its treatment program and were not assigned to any particular home healthcare aide.

47. OHC's dispatcher orally informed Plaintiff that one of the reasons she was not dispatching patients to him was because of patient reports indicating that they had difficulty understanding him stemming from his accent.

48. Plaintiff is fluent in the English language. Plaintiff's accent is easily understandable.

49. OHC never provided Plaintiff written documentation of these accent-based complaints; rather, his performance reviews were overwhelmingly positive. Indeed, in 2014 OHC converted Plaintiff's employment status from independent contractor to employee.

50. Plaintiff filed the Charge and participated in the EEOC's investigatory process. Shortly after the filing of the Charge and his participation in the investigatory process, OHC further reduced the amount of patient visits it provided Plaintiff, leading to his constructive discharge. Plaintiff's filing of and participation in the Charge was the cause of OHC's further reduction in Plaintiff's patient visits.

Exhibit A

51. Thus, OHC's reduction of Plaintiff's patient workload and the return of his company vehicle occurred during circumstances giving rise to an inference of discrimination based on his race or national origin.

52. For the reasons stated above, OHC violated Title VII.

53. The violations of Title VII described above additionally caused Plaintiff non-economic damages, including but not limited to emotional distress.

## SECOND CLAIM FOR RELIEF

### *(VIOLATION OF THE COLORADO ANTI-DISCRIMINATION ACT)*

54. Plaintiff incorporates by reference the allegations in all paragraphs as if set forth fully herein.

55. The Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 (2016) (the "CADA") *et seq.*, prohibits employers from discriminating against employees based on their protected class status. C.R.S. § 24-34-402(1)(a).

56. The CADA likewise makes it unlawful to discriminate against any person because such person has opposed any practice made discriminatory because he or she has either filed a charge or testified, assisted, or participated in an investigation, proceeding, or hearing. *Id.* at (e)(IV).

57. Under Colorado Anti-Discrimination Act (CADA), a prima facie discrimination case requires proof that (1) the employee belongs to a protected class; (2) the employee was qualified; (3) despite being qualified, the employee suffered adverse employment action; and (4) the

Exhibit A

circumstances give rise to an inference of discrimination based on membership in the protected

class. *Williams v. Department of Public Safety*, 369 P.3d 760 (Colo. App. 2015).

58. For the same reasons above, OHC additionally violated the CADA.

## **DAMAGES**

59. The discriminatory and retaliatory conduct in violation of Title VII and CADA, as described

above, caused Plaintiff the following damages:

      a.  Lost back pay, wages and benefits in amounts to be established at trial;

      b.  Lost front pay, future wages and benefits in amounts to be established at trial;

      c.  Emotional upset, stress and anxiety in amounts to be established at trial; and

      d.  Out of pocket expenses, litigation costs and attorney fees in amounts to be

           established at trial.

60. Defendants violations of Title VII and the CADA were willful and, as a result, Plaintiff is

entitled to an award of punitive damages to the full extent permitted by law.

## **RELIEF REQUESTED**

61. Plaintiff respectfully requests judgment against Defendant Optimal Home Care Inc. as

follows:

      a.  Awarding Plaintiff special damages for lost wages, benefits and out of pocket

           expenses in amounts to be proven at trial;

Exhibit A

b.  Awarding Plaintiff general damages for emotional distress in an amount to be established at trial;

c.  Awarding punitive damages, pursuant to 42 U.S.C. § 1981, 2000(e), in the maximum amount permitted by law;

d.  Awarding Plaintiff reinstatement to his home healthcare aide position, or, in lieu of reinstatement, lost future wages and benefits in an amount to be established at trial;

e.  Awarding Plaintiff statutory and reasonable attorney fees, litigation expenses and costs incurred in this action as allowable at law;

f.  Awarding Plaintiff prejudgment interest on his lost wages award and economic loss; and

g.  Awarding Plaintiff any additional or further relief that the Court finds equitable, appropriate, or just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully submitted, this January 19, 2017 by:

s/Igor Raykin

ATTORNEY FOR PLAINTIFF
Igor Raykin, Esq., Atty. Reg. #: 43081
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, Colorado 80014
Phone: 720-748-8888
Fax:    720-748-8894
E-mail: igor@coloradolawteam.com

Original signature on file in the office of the attorney.

Exhibit A